## UNITED STATES  DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**ROBERT JUARBE #303486**                    **CIVIL ACTION**

**versus**                                   **NO. 06-0513**

**BURL CAIN**                                **SECTION: "S" (3)**

## REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.  Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  See 28 U.S.C. § 2254(e)(2).[1]  Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

---

[1]  Pursuant to 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is now a statutorily mandated determination.  According to Section 2254(e)(2), the district court generally may hold an evidentiary hearing only when the petitioner has shown that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable (28 U.S.C. § 2254(e)(2)(A)(i)) or the claim relies on a factual basis that could not have been previously discovered through the exercise of due diligence (28 U.S.C. § 2254(e)(2)(A)(ii)); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner (28 U.S.C. § 2254(e)(2)(B)).

Petitioner, Robert Juarbe, is a state prisoner incarcerated at the Louisiana State Penitentiary, Angola, Louisiana.  On October 26, 1994, he was convicted of second degree murder in violation of La.Rev.Stat.Ann. § 14:30.1.[2]  On November 16, 1994, he was sentenced to life imprisonment without benefit of probation, parole, or suspension of sentence.[3]  On October 12, 1995, the Louisiana Fourth Circuit affirmed his conviction and sentence.[4]  He did not seek review of that judgment by filing a writ application with the Louisiana Supreme Court.

On or after October 9, 1998, petitioner filed with the state district court an application for post-conviction relief.[5]  That application was denied on March 25, 1999.[6]  He next filed with the Louisiana Fourth Circuit Court of Appeal an application for a writ of review.[7]  On May 25, 1999, that application was granted and the state district court was ordered to grant petitioner an out-of-time appeal.[8]  The state district court granted that out-of-time appeal on May 28, 1999.[9]  On July 31, 2002, the Louisiana Fourth Circuit Court of Appeal again affirmed petitioner's conviction and

---

[2] State Rec., Vol. IV of VII, transcript of October 24-26, 1994, p. 272.

[3] State Rec., Vol. II of VII, transcript of November 16, 1994, p. 2.

[4] State v. Juarbe, 660 So.2d 1223 (La. App. 4th Cir. 1995) (No. 95-KA-0395); see also State v. Juarbe, 824 So.2d 1240, 1244 (La. App. 4th Cir. 2002).

[5] State Rec., Vol. I of VII.  Petitioner dated the application October 9, 1998.

[6] State Rec., Vol. I of VII, Judgment dated March 25, 1999.

[7] State Rec., Vol. I of VII.

[8] State v. Juarbe, No. 99-K-1025 (La. App 4th Cir. May 25, 1999) (unpublished); State Rec., Vol. I of VII.

[9] State Rec., Vol. II of VII, minute entry dated May 28, 1999.

sentence.[10]  He then filed with the Louisiana Supreme Court an application for supervisory and/or remedial writs which was denied on October 31, 2003.[11]

On or after May 2, 2004, petitioner filed with the state district court another post-conviction application.[12]  That application was denied on September 1, 2004.[13]  He next filed with the Louisiana Fourth Circuit Court of Appeal an application for a supervisory writ[14] which was denied on October 26, 2004.[15]  He then filed with the Louisiana Supreme Court an application for a writ of certiorari and review[16] which was denied on November 28, 2005.[17]

On January 24, 2006, petitioner filed this federal application for *habeas corpus* relief.[18]  In support of his application, petitioner claims:

      1.      Petitioner was indicted by an illegally empaneled grand jury;

---

[10]  State v. Juarbe, 824 So.2d 1240 (La. App. 4th Cir. 2002) (No. 2001-KA-2250); State Rec., Vol. IV of VII.

[11]  State *ex rel.* Juarbe v. State, 857 So.2d 467 (La. 2003) (No. 2002-KH-2846); State Rec., Vol. IV of VII.

[12]  State Rec., Vol. I of VII.  Petitioner dated that application May 2, 2004.

[13]  State Rec., Vol. I of VII, Judgment dated September 1, 2004.

[14]  State Rec., Vol. I of VIII.

[15]  State v. Juarbe, No. 2004-K-1694 (La. App. 4th Cir. Oct. 26, 2004) (unpublished); State Rec., Vol. I of VII.

[16]  State Rec., Vol. VII of VII.

[17]  State *ex rel.* Juarbe v. State, 916 So.2d 133 (La. 2005) (No. 2004-KH-3095); State Rec., Vol. VII of VII.

[18]  Rec. Doc. 5.

2.      Petitioner received ineffective assistance of counsel;

3.      The state courts erred in denying petitioner's claim that his rights were violated when witnesses were promised leniency in exchange for their testimony;

4.      The trial court erred in instructing the jury; and

5.      There was insufficient evidence to support petitioner's conviction.[19]

The state argues that petitioner's federal application is untimely.[20]  For the following reasons, this Court agrees.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") established a one-year statute of limitations for the filing of federal *habeas corpus* applications.  The method for calculating a petitioner's one-year period is set forth in 28 U.S.C. § 2244(d)(1), which provides:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of –
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> > (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

---

[19]   In the supporting memorandum, petitioner lists eight claims.  However, because those claims are repetitive and overlapping, the Court has condensed them into these five claims.

[20]   Rec. Doc. 10.

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

In the instant case, subsections (B), (C), and (D), are clearly inapplicable.[21] Moreover, even subsection (A), which runs the statute of limitations from the finality of petitioner's conviction, is not strictly applicable, in that petitioner's conviction became final in 1995 prior to the enactment of the AEDPA. With respect to such prisoners, the United States Fifth Circuit Court of Appeals has held that a "grace period" applies and that the one-year statute of limitations began to run in such cases on the AEDPA's effective date, April 24, 1996. Flanagan v. Johnson, 154 F.3d

---

[21] Petitioner does not argue that those subsections are applicable, and the Court finds that they are not. As to subsection (B), there is no allegation that petitioner's ability to file a post-conviction application was impeded by any action of the State. As to subsection (D), petitioner's claims do not involve a factual predicate which was unknown to him at the time of his conviction. Lastly, for the reasons set forth below in greater detail, subsection (C) is likewise inapplicable.

As noted, subsection (C) delays the commencement of the statute of limitations where petitioner's claims involve newly recognized constitutional rights. This Court notes that three of petitioner's claims are founded on State v. Dilosa, 848 So.2d 546 (La. 2003). In Dilosa, the Louisiana Supreme Court held that Louisiana laws which established a unique method for the selection of the grand jury venire and foreperson in Orleans Parish violated La. Const. art. III, § 12(A), which prohibits the passage of local laws concerning criminal actions. Because Dilosa was a decision by the *Louisiana* Supreme Court and concerned only a *state* constitutional provision, it is irrelevant to tolling under subsection (C), which delays the AEDPA's statute of limitations only where the *United States* Supreme Court has newly recognized a *federal* constitutional right. Davis v. Jones, Civil Action No. 05-5524, 2006 WL 1540114, at *2 (E.D. La. May 31, 2006) (Berrigan, J.); see also Finan v. Merritt, No. 802CV2171T30MSS, 2005 WL 3372866, at *3 (M.D. Fla. Dec. 12, 2005); Bathe v. Wallace, No. 05C541C, 2005 WL 3307505, at *3 (W.D. Wis. Dec. 5, 2005). The Court also notes that petitioner, in support of another claim challenging the grand jury composition, references a decision allegedly issued in 2001 by a judge of the Orleans Parish Criminal District Court. That decision is likewise irrelevant for purposes of subsection (C), because it does not involve a ruling of the United States Supreme Court.

196, 200-02 (5th Cir. 1998).  Accordingly, petitioner had only until April 24, 1997, to file a federal application for *habeas corpus* relief, unless that deadline was extended through tolling.

        The Court first looks to statutory tolling.  The AEDPA provides that the statute of limitations is tolled for the period of time during which a properly filed application for state post-conviction relief or other collateral review attacking a conviction or sentence is pending in state court.  28 U.S.C. § 2244(d)(2).  However, from April 24, 1996, to April 24, 1997, petitioner had no applications pending before the Louisiana state courts.  Therefore, petitioner is not entitled to any statutory tolling of the AEDPA's statute of limitations during that period.

        The Court also notes that the United States Fifth Circuit Court of Appeals has held that the AEDPA's statute of limitations can, in rare and exceptional circumstances, be equitably tolled.  See Davis v. Johnson, 158 F.3d 806, 811 (5th Cir. 1998).  However, "[e]quitable tolling applies principally where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights."  Coleman v. Johnson, 184 F.3d 398, 402 (5th Cir. 1999) (internal quotes and citations omitted).  This Court knows of no reason that would support equitable tolling of the statute of limitations regarding petitioner's federal application for *habeas corpus* relief.

        Out of an abundance of caution, the Court makes two additional observations regarding the timeliness issue.

        First, the Court notes that petitioner filed state post-conviction applications in 1998 and 2004.  However, because those applications were filed *after* the expiration of the AEDPA's one-year statute of limitations, the applications and the related appellate court proceedings have no

bearing on the timeliness of petitioner's federal application.  See Scott v. Johnson, 227 F.3d 260, 263 (5th Cir. 2000); Magee v. Cain, Civ. Action No. 99-3867, 2000 WL 1023423, at *4, aff'd, 253 F.3d 702 (5th Cir. 2001); Williams v. Cain, Civ. Action No. 00-536, 2000 WL 863132, at *2 (E.D. La. June 27, 2000).

Second, the Court notes that, in connection with the state post-conviction application filed in 1998, petitioner was granted an out-of-time appeal.  However, for the following reasons, the granting of that out-of-time appeal did not "restart" the statute of limitations.

In Salinas v. Dretke, 354 F.3d 425 (5th Cir. 2004), the United States Fifth Circuit Court of Appeals was confronted with the issue of how the grant of an application to file an out-of-time petition for discretionary review ("PDR") under Texas law affected the running of the AEDPA's statute of limitations.  In that case, the federal district court had held that the petitioner's one-year period for seeking federal *habeas corpus* review expired on March 31, 2002, and, therefore, his federal application was untimely when filed on April 28, 2002.  However, on October 30, 2002, the Texas Court of Criminal Appeals granted petitioner's application to file an out-of-time PDR.  At that point, *for state law purposes,* petitioner's conviction was again on direct review until the state court rejected the PDR on January 22, 2003.  The United States Fifth Circuit Court of Appeals noted:

> When the Court of Criminal Appeals grants the right to file an "out-of-time" PDR, it restores the petitioner to the position he was in when he first possessed the right to petition for discretionary review.  A defendant who still has the right to file a PDR is considered to be in the midst of the direct review process.

Salinas, 354 F.3d at 429 (citation and footnote omitted).  The Fifth Circuit continued:

> On this basis, Salinas urges that the statute of limitations could not have lapsed in April 2002, because the prescription period

should have begun only on the conclusion of direct review, *see* 28 U.S.C. § 2244(d)(1)(A), and direct review once again was pending when the [federal] district court dismissed his petition [on November 18, 2002]. Thus, Salinas argues, his conviction was "de-finalized," and the statute of limitations – though legitimately initiated in August 2000 – should be deemed to have begun again with the rejection of the PDR in January 2003.

      We disagree. *On its face, AEDPA provides for only a linear limitations period, one that starts and ends on specific dates, with only the possibility that tolling will expand the period in between. See* § 2244(d)(1), (2). *So long as the petitioner is being held pursuant to the same state court judgment, nothing in AEDPA allows for a properly initiated limitations period to be terminated altogether by collateral state court action.* Rather, the statutory framework only provides for the tolling of limitations during the pendency of state collateral review. *See* § 2244(d)(2).

      Thus, the issue is not whether the Court of Criminal Appeals' action revitalized Salinas's limitations period, but rather whether the existence of that potential relief prevents the limitations period from starting to run after that level of appeal has been denied. That is to say, we need to determine whether, in Texas, the mechanism by which Salinas obtained the right to file an "out-of-time" PDR is part of the direct or collateral review process. If that relief comes as a result of direct review, there would be no basis for limitations even to begin running until the Court of Criminal Appeals finalized the judgment by declining to grant relief on that level of appeal. *If, on the other hand, an "out-of-time" PDR is awarded only as a result of the collateral review process, limitations is tolled merely while the petitioner seeks to obtain that relief.*

      *After reviewing the relevant state law, we conclude that the Court of Criminal Appeals is authorized to grant this form of relief only through state habeas proceedings. As a result, when a petitioner convicted in the Texas system acquires the right to file an "out-of-time" PDR, the relief tolls AEDPA's statute of limitations until the date on which the Court of Criminal Appeals declines to grant further relief, but it does not require a federal court to restart the running of AEDPA's limitations period altogether.*

Salinas, 354 F.3d at 429-30 (footnotes omitted) (emphasis added).

      Therefore, as described by the Fifth Circuit, the grant of an application to file an out-

of-time PDR is secured in Texas through the state post-conviction collateral review process. When

such an application is granted, then the criminal defendant is considered to again be in the midst of the direct review process *for state law purposes*.  Nevertheless, because the permission to pursue the out-of-time PDR was granted through post-conviction collateral proceedings, *for federal law purposes* the criminal defendant is entitled only to tolling under § 2244(d)(2), not a "restarting" of the statute of limitations under § 2244(d)(1)(A).

The undersigned concludes that the same would be true with respect to petitioner's grant of an out-of-time appeal under Louisiana law.  After petitioner's conviction and sentence originally became "final" in 1995, he secured the out-of-time appeal through the filing of a state post-conviction application in 1998.[22]  Despite the fact that the grant of the out-of-time appeal again restored petitioner to the midst of the direct review process for state law purposes, Salinas dictates that the AEDPA's statute of limitations, having already been properly initiated, was not "restarted" by the filing of the post-conviction application, the grant of the out-of-time appeal, and the subsequent proceedings.  See Stephens v. Lensing, Civil Action No. 03-1076 "S" (3) (E.D. La. May 11, 2004) (Lemmon, J.), certificate of appealability denied, No. 04-30575 (5th Cir. Sept. 17, 2004).  Moreover, because the statute of limitations had already expired by the time petitioner filed the state post-conviction application which resulted in the grant of the out-of-time appeal, the timeliness of his federal application is unaffected by that post-conviction application and the proceedings relating to the out-of-time appeal.  See McGee v. Cain, 104 Fed. App'x 989, 992 (5th Cir. 2004), cert. denied, 543 U.S. 1162 (2005).

---

[22]   The Court notes that the Louisiana Supreme Court has held that an out-of-time appeal can be secured *only* in post-conviction proceedings.  State v. Counterman, 475 So.2d 336 (La. 1985).

For the foregoing reasons, petitioner's federal application for *habeas corpus* relief had to be filed on or before April 24, 1997, in order to be timely. Petitioner's federal application was not filed until January 24, 2006,[23] and it is therefore untimely.

### RECOMMENDATION

Accordingly, **IT IS RECOMMENDED** that the federal petition for *habeas corpus* relief filed by Robert Juarbe be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this fifteenth day of August, 2006.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**

---

[23] Petitioner signed his federal *habeas corpus* application on January 24, 2006. Rec. Doc. 5. That date represents the earliest date that petitioner could have presented his application to prison officials for mailing and, therefore, the earliest date that this Court could deem his *habeas* petition to have been filed for statute of limitations purposes. Roberts v. Cockrell, 319 F.3d 690, 691 n.2 (5th Cir. 2003).